IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Terry Lee Starr, ) | Civil Action No. 2:10-1236-RBH-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Warden M.L. Rivera, Lt. A. Pelt, ) | |
| Lt. Yates, Lt. P. Sneed, Dr. C. ) | |
| Wigfall, and Dr. NFN Fulmer, ) | |
| Defendants. ) | |
| _____ ) | |

The Plaintiff, a pro se prisoner, brings this action alleging claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Torts Claims Act ("FTCA").[1]  This matter is before the Court on the Defendants' Motion to Dismiss, or, alternately, for Summary Judgement. (Dkt # 34.)[2]

On November 17, 2010, the Defendants filed a Motion to Dismiss, or alternately, for Summary Judgment. (Dkt. # 34.)  On November 18, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On January 20, 2010, the Plaintiff filed a response opposing the Defendants' Summary Judgment Motion. (Dkt. # 52.)

---

[1] 28 U.S.C. § 1346 and 28 U.S.C. § 2671 et seq.

[2] Because the court has considered matters outside of the pleadings, the undersigned is considering the motion as one for summary judgment. Fed.R.Civ.P. 12(d).

## FACTS

The Plaintiff is a federal inmate currently incarcerated at the Oklahoma Transfer Center in Oklahoma while in transit to the Federal Correctional Institution in Coleman, Florida. (Dkt. # 58 - Change of Address Notice.)  At the time of the incidents alleged in the Complaint, the Plaintiff was incarcerated at the Federal Corrections Institution in Estill, South Carolina ("FCI-Estill").

In his Complaint, the Plaintiff alleges he admitted himself into protective custody and was housed in the Special Housing Unit ("SHU") because he states he was threatened by Mexican gang members. (Compl. 5.) The Plaintiff alleges that on September 9, 2009, Officer T. Smith informed him that he was going to be getting a cellmate. (Compl. at 4.)  He states that Smith told him that Lt. Sneed had entered the order. (Compl. at 5.)  The Plaintiff alleges that Lt. Sneed knew that the Plaintiff had been threatened and he told the officers that he could not be placed in a cell with any Mexican inmates and that he feared for his safety.  *Id*.  He states he refused to "cuff up" and Officer Yates sprayed him twice with pepper spray in "an unnecessary over the allowed amount" leaving his face and body soaked in pepper spray. (Compl. at 5-6.)   He alleges he was not allowed to wash the spray off and he has suffered skin problems and ear infections. (Compl. at 6.)

He also alleges that while Officer Yates was spraying him with pepper spray, Lieutenant Pelt shot him three times with a pellet gun while he was in his cell. (Compl. at 7.)  He states that one of the bullets hit him in the spine aggravating an old injury received in a car accident in 2005.  *Id*.  He acknowledges he was seen by medical staff, but he alleges medical staff V. Eneje, Tamala Middleton, and Nurse Green did not address the seriousness of his pain and

injuries.  *Id.*  He alleges he has requested to see a doctor, but he has not been allowed to see one.  (Compl. a 7-8.)

The Plaintiff alleges he spoke with Warden Rivera and informed her of the threats and fears he has regarding Mexican inmates, but that Rivera responded that the Plaintiff could not choose his cellmates and that she was the one who had ordered that the Plaintiff be sprayed. (Compl. at.8.)  He alleges other inmates who have refused to "cuff up" when not wanting a cellmate have not been sprayed.  *Id.*  The Plaintiff is seeking actual and punitive damages, costs, any other relief the court deems just and proper, and sanctions for the Defendants. (Compl. at 10.)

**Defendants' Statement of Facts**

The Defendants state that on April 7, 2009, the Plaintiff was placed in the SHU as a result of disciplinary charges.  (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 7- Discipline Hearing Officer's Report.) The Defendants state that on April 28, 2009, the Plaintiff was interviewed by the SHU Lieutenant about a letter he had sent to the Warden requesting placement in protective custody status.  (Defs.' Mem. Supp. Summ. J. Mot. Ex. #  8.)  The Plaintiff told the SHU Lieutenant that he had been approached by a group of Hispanic or Mexican inmates on the recreation yard and they told him in an aggressive manner to watch his back.  *Id.*  An investigation was begun regarding the Plaintiff's safety.  (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 9.)  On May 20, 2009, the Plaintiff's request for protective custody was denied.  The Plaintiff, however, refused to return to the compound and remained in the SHU. *Id.*

In his affidavit, the Defendant Yates states the following.  (Defs.' Mem. Supp. Summ. J. Mot. Attach # 25- Yates Aff.)  On September 16, 2009, at approximately 10:30 a.m., Yates

3

states he went to the SHU to speak to the Plaintiff who had refused to submit to restraints, covered his cell window, and barricaded the door with his mattress. (*Id.* ¶ 4.) Yates ordered the Plaintiff to remove the mattress and window covering and he complied. (Id. ¶ 4.)[3] The Defendant Yates asked the Plaintiff why he was refusing to be placed in restraints and the Plaintiff stated he did not want a cell mate. *Id.* Yates states the Plaintiff then placed the mattress against the cell door again. *Id.* Yates notified the Captain of the situation and the officers attempted to informally resolve the situation, however, their attempts were unsuccessful. (Defs.' Mem. Supp. Summ. J. Mot. Attach # 25- Yates Aff. ¶ 5.) Because the Plaintiff had his cell window covered and the door barricaded, officers were unable to see what the Plaintiff was doing in his cell and the Acting Warden ordered a Use of Force Team to assemble and for chemical munitions to be brought to SHU.   (*Id.* at ¶ 6.)[4] Yates gave the Plaintiff one last order to submit to restraints and when he refused, Yates ordered a staff member to administer munitions through the food slot and a three second sprayed of mace was sprayed on the Plaintiff. (*Id.* at ¶ 7.) Afterwards, Yates again ordered the Plaintiff to submit to hand restraints, but he again refused. *Id.* Yates ordered the staff member to administer another three second burst of munitions. *Id.* The Plaintiff again refused to submit to restraints and Yates ordered that the pepper ball launcher be used. (Defs.' Mem. Supp. Summ. J. Mot. Attach # 25- Yates Aff. ¶ 8.)

---

[3]The undersigned notes that there are two paragraphs numbered as 4 in Yates' affidavit.

[4]The incident report states that this took place at 12:04 p.m., approximately an hour and a half after the incident first began. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 22.)

4

After six rounds from the Pepper Ball Launcher were dispensed, Yates again ordered the Plaintiff to submit to restraints, which he again refused. *Id.* Yates ordered another six rounds from the pepper ball launcher be administered in the Plaintiff's cell and then ordered the Use of Force Team to enter the cell. *Id.* The Team entered the cell and applied both hand and leg restraints to the Plaintiff and removed him from the cell. (*Id.* at ¶ 9) The Plaintiff was taken to another cell where he was given a shower to decontaminate himself and then placed on the bed in ambulatory restraints and given clean underwear. *Id.* He was examined by medical and no respiratory distress, redness to his eyes, or any wounds or injuries were noted. *Id.*; Defs.' Mem. Supp. Summ. J. Mot. Attach. # 19- Pl.'s Med. Records at 14.) It was noted that the Plaintiff had a runny nose and was complaining of stinging in his groin area. *Id.* The Plaintiff was told to take a full shower which he could do while in ambulatory restraints. *Id.*

On September 16, 2009, an incident report was written charging the Plaintiff with refusing an order from staff for refusing to submit to hand restraints. (Defs.' Mem. Supp. Summ. J. Mot. Attach # 8.) On October 6, 2009, a hearing on this incident report was conducted by the Discipline Hearing Officer ("DHO"). *Id.* The DHO found the Plaintiff guilty and sanctioned him with the loss of 14 days of good conduct time and 6 months of commissary privileges, and the impoundment of his personal property for 30 days. *Id.* The Plaintiff did not appeal the DHO's decision.

On June 18, 2010, the Plaintiff signed up for sick call at FCI-Otisville claiming, for the first time, he had been experiencing chronic back pain for about ten months caused by being shot by the pellet gun at FCI-Estill. He was given Naproxen for pain and told to return as

5

needed. He again complained again on July 2, 2010, about lower back pain, and medical staff ordered a L-spine film, which is still pending.

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a

6

genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION[5]

**FTCA Claim**

The Plaintiff alleges a cause of action for negligence pursuant to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 1346 and 28 U.S.C. § 2671 et seq. In FTCA actions, the only proper defendant is the United States. As the united States is not a Defendant in this action, the undersigned recommends that this claim be dismissed without prejudice.

***Heck v. Humphrey***

The Plaintiff is alleging *Bivens* claims against the Defendants. When a prisoner seeks damages in a *Bivens* action, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Heck v. Humphrey*, 512 U.S. 477 (1994); *Messer v.*

---

[5]The Defendant Sneed has not been served and it appears he is no longer working at Estill. However, as the undersigned recommends that the entire complaint be dismissed, it is recommended that he be dismissed from the case without service of process or response. *See, e.g., Ali v. Corr. Med. Servs., Inc.*, C.A. No. DKC–09–0466, 2009 WL 2713948. at *1 n. 1 (D.Md. Aug. 25, 2009).

*Kelly*, 129 F.3d 1259 (4th Cir.1997)(stating that the rationale in *Heck* applies in *Bivens* actions).

The Supreme Court applied the *Heck* rule to prison disciplinary proceedings in *Edwards v. Balisok*, 520 U.S. 641 (1997), when it held that, in the context of prison disciplinary hearings that result in the loss of good-time credits, claims which necessarily imply the invalidity of the judgment must be pursued in habeas corpus, not in a *Bivens* action. *Kerr v. Orellana*, 969 F.Supp. 357 (E.D.Va.1997)(holding that prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under *Heck*). The Plaintiff has not shown that he successfully attacked his disciplinary hearing conviction and cannot maintain a *Bivens* action for monetary damages if a judgment in his favor would necessarily imply the invalidity of the outcome of the disciplinary proceeding.

Here, the undersigned finds that the awarding of damages to the Plaintiff would necessarily imply the invalidity of the outcome of his disciplinary hearing and thus his excessive force claim is barred under *Heck* and *Balisok*. *McCaskill v. Ryder*, 2010 WL 2710384 * 4 (W.D. La. 2010)(holding that "[a]ccording to the Incident Report and the DHO's findings, plaintiff was the aggressor and the force used to subdue him was clearly justified. Thus, plaintiff's behavior led to the escalation of the incident, and ultimately the use of force against him. A judgment in his favor in this civil rights lawsuit would necessarily call into question the validity of the DHO's findings of fact and the DHO conviction which resulted in the loss of good time credits."). Alternatively, the undersigned recommends that the Plaintiff's excessive force claims be dismissed on the merits as discussed below.

**Excessive Force Claims**

The Plaintiff alleges the Defendants used excessive force against him when he was sprayed with mace in an amount which he states was over the limits allowed and when he was shot twice with the pepper ball launcher. (Compl. at 6.) He states that he was not threatening anyone as he was in his locked cell. *Id.*

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U.S. 312, 321 (1986). Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Id.* at 322.

Furthermore, the absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy,* 559 U.S. ----, Slip Op. No. 08-10914 (Feb. 22, 2010).

The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* As the Court noted in *Wilkens*, the issue is the nature of the force, not the extent of injury.

The United States Court of Appeals for the Fourth Circuit has addressed the use of mace in a prison setting. In *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir.1984), the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution. Specifically, in *Bailey*, the court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner. *Id.* at 969-70. The Court also found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat. *Id.*

It is undisputed that the Plaintiff refused to submit to restraints or cuff up after repeatedly being directed to do so.  Further, the Plaintiff does not dispute that he persisted in his disobedience even after he was warned he was would be sprayed with mace and after he actually was sprayed with mace twice.  Furthermore, the BOP policy allows the use of pepper ball launchers which shoot plastic spheres that are filled with a powder OC and burst on impact. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 10 BonDurant Aff. ¶ 14.)  Policy allows five to eight rounds to be used and the operator to aim for the center mass area of the inmate. (*Id.*)

It appears that the need for force and the amount of force used was not unreasonable. While the Plaintiff alleges that he suffered a back injury, skin problems, and an ear infection as

a result of the force used by the Defendants, beyond his own allegations, the Plaintiff has provided no evidence, in the form of medical records or otherwise, that he was injured by the exposure to the pepper spray or the pepper ball launcher. Additionally, the Defendants were reasonable in perceiving a threat from the Plaintiff, who admits that he disobeyed numerous direct orders to submit to restraints.  A short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir.2004) (holding that officers did not violate an inmate's Eighth Amendment rights when they pepper sprayed him after he refused to obey orders);*Clement v. Gomez,* 298 F.3d 898, 904 (9th Cir.2002) (holding that the use of two five-second bursts of pepper spray was not excessive when used to break up a fight among inmates after they had repeatedly ignored verbal commands to stop). Finally, although the Plaintiff alleges the defendants should not have deployed the mace or the pepper ball launcher because he was confined in his cell, inmates cannot be allowed to be disruptive and violate direct orders of the correctional officers.  *Bailey*, 736 F.2d at 969.  See also  *Jones v. Shields*, 207 F.3d 491, 495-96 (8th Cir.2000) (holding that correctional officer's use of a pepper-based chemical spray resulted in de minimus injury and was not "repugnant to the conscience of mankind" when used to subdue a "recalcitrant prisoner" locked in his cell or in handcuffs).

Accordingly, based on the foregoing, the court concludes that no reasonable jury could find that the Defendants' use of mace was not a good faith effort to restore and maintain prison discipline but rather was used maliciously and sadistically to cause physical harm. *See Hudson*, 503 U.S. at 6-7. The Defendants' motion for summary judgment should therefore be granted regarding the Plaintiff's excessive force claims.

**Failure to Protect Claim**

The Plaintiff also alleges a failure to protect claim. (Compl. at 9.) The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' " *Id.* at 834 (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with " 'deliberate indifference' to inmate health or safety.' " *Id*. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. *Id.* at n. 3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Furthermore, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence; the plaintiff must show that the defendants knew of the risk and consciously disregarded it. *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Moore v. Winebrenner*, 927 F.2d 1312 (4th Cir.1991).

The Plaintiff has not shown he was incarcerated under conditions posing substantial risk of serious harm, nor has he presented any evidence to show that the officers knew of and deliberately disregarded a threat to his safety. Indeed, following the Plaintiff's complaint that he had been threatened by unidentified Mexican gang members and his request for protective

custody status, officials investigated the Plaintiff's complaints. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 10 - Decl. of BonDurant ¶¶ 4-5.) During the investigation, the Plaintiff was not allowed to be celled or have recreation with any Hispanic inmates. (*Id.* at ¶ 5.) The investigation revealed no evidence corroborating the Plaintiff's claims and therefore the Plaintiff's request for protective custody status was denied. (*Id.* at ¶ 6.)[6] The Plaintiff has not set forth any evidence to support a finding that he was threatened or in danger and the Defendants consciously disregarded any risk to the Plaintiff's safety. Furthermore, the Plaintiff has not alleged an adequate injury to state a claim. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (holding serious injury required in order to state a failure to protect claim); *see also Siegert v. Gilley*, 500 U.S. 226, 234-35 (1991). Accordingly, the Defendants should be granted summary judgment on the Plaintiff's failure to protect claim.

**Equal Protection Claims**

The Plaintiff alleges that he was treated more harshly than other inmates who had refused to "cuff-up." (Compl. at 8.) The Equal Protection Clause requires the Government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To be successful on an equal protection claim, a plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If the plaintiff makes such showing, "the court

---

[6]The undersigned also notes that the Plaintiff was convicted of "refusing to accept a program assignment." (Compl. Attach. # 2.) He was sanctioned with the loss of 14 days of good conduct time, and the loss of phone privileges for six months and the loss of visitation privileges for three months. *Id.* Therefore, the undersigned finds that the awarding of damages to the Plaintiff on this claim would necessarily imply the invalidity of the outcome of his disciplinary hearing and would be barred under *Heck* and *Balisok*.

13

proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

Here, the petitioner states that the Defendants have violated his right to equal protection by using force when he refused to cuff up. (Compl. at. 8.) In support of this claim, the Plaintiff alleges other inmates were not subjected to such force when they refused to cuff up. However, the Plaintiff does not assert that his allegedly unequal treatment was the result of intentional discrimination. Thus, the Plaintiff's conclusory and unsupported statements are insufficient to state an equal protection claim and the Defendants should be granted summary judgment on the Plaintiff's equal protection claims.

**Medical Indifference Claims**

The Plaintiff alleges he was denied medical treatment after he was maced and shot with the pepper ball launcher when the medical staff, specifically Nurse Green, V. Eneje, and Tamala Middleton, refused to acknowledge and document the seriousness of his back pain and injuries. (Compl. at 7.)

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. Id. The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

Deliberate indifference is a very high standard. In *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (internal citations omitted)

Furthermore, the Fourth Circuit has held that to bring a denial of medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier*, 896 F.2d 848. Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

The Plaintiff alleges that three medical providers who are not defendants in this action failed to document the seriousness of his pain and injuries and this amounted to a failure to treat his injuries. (Compl. at 7.) First, there are no factual allegations of medical indifference

15

against any of named Defendants in this action. Second, the Defendants in this action are all non-medical personnel and thus the Plaintiff must show that such these officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier*, 896 F.2d 848. There are no such allegations or evidence to support any such allegations in this case.

Furthermore, the records show that the Plaintiff received medical attention after he was maced and the pepper ball launcher was deployed. Although the Plaintiff believes the attention was lax in effort the Plaintiff does not state what treatment he expected to receive, but simply states that three medical workers refused to document the seriousness of his pain and injuries. Accordingly, the Plaintiff's medical indifference claims against the Defendants should be dismissed.

*State Law Claims*

To the extent that the Plaintiff is raising state law claims, the undersigned recommends that the court decline to exercise jurisdiction over whatever state law claims the Plaintiff may have against the Defendants. *See* 28 U.S.C. § 1367(c); *see, e.g., Patterson v. City of Columbia*, 2003 WL 23901761, at *5 (D.S.C. Dec 29, 2003) ("Patterson has raised various state law claims against all Defendants. Because the federal claims must be dismissed, the court declines to exercise jurisdiction over the remaining state law claims.")

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment (Dkt. # 34) be GRANTED and the *Bivens* claims raised in the Complaint be

Dismissed with Prejudice. The remaining FTCA and state law claims should be dismissed without prejudice.

IT IS SO RECOMMENDED.

> s/Bruce Howe Hendricks
> United States Magistrate Judge

May 20, 2011
Charleston, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).