IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Terry Lee Starr,                              ) | Civil Action No.: 2:10-cv-01236-RBH |
|                                                    ) | |
|     Plaintiff,              ) | |
|                                                    ) | |
| v.                                              ) | **ORDER** |
|                                                    ) | |
| M.L. Rivera, *Warden*; A. Pelt, ) | |
| *Lieutenant*; J. Yates, *Lieutenant*; ) | |
| P. Sneed, *Lieutenant of SHU*;   ) | |
|                                                    ) | |
|     Defendants.         ) | |
| _____) | |

    Plaintiff, a federal prisoner proceeding *pro se*, brought this suit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq.

    On November 17, 2010, Defendants filed their [Docket Entry 34] Motion to Dismiss, or in the alternative, for Summary Judgment ("Motion for Summary Judgment").[1] Because Plaintiff is proceeding *pro se*, the court entered an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on November 18, 2010, advising Plaintiff of the motion for summary judgment procedures and the possible consequences if he failed to adequately respond. On January 20, 2011, the court received Plaintiff's timely-filed [Docket Entry 52] Response in Opposition to Defendants' summary judgment motion.

    This matter is now before the court with the [Docket Entry 59] Report and Recommendation

---

[1] Because the court has considered matters outside of the pleadings, the undersigned is treating the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

("R & R") of United States Magistrate Judge Bruce H. Hendricks[2] filed on May 20, 2011. In her R & R, the Magistrate Judge recommended that the court should grant Defendants' summary judgment motion and dismiss Plaintiff's claims. *See* R & R at 16-17. On June 30, 2011,[3] Plaintiff timely filed his [Docket Entry 66] Objections to the R & R. Also on that date, Plaintiff filed a motion to appoint counsel, [Docket Entry 65], which Defendants opposed on July 15, 2011, *see* Defs' Resp. in Opp. [Docket Entry 67].

**Background Facts**

Plaintiff is a federal inmate currently incarcerated at Federal Correctional Complex II in Adelanto, California. At the time of the incidents in question, Plaintiff was incarcerated at the Federal Correctional Institution in Estill, South Carolina ("FCI-Estill").

I.   Complaint

In his [Docket Entry 1] Complaint, Plaintiff alleges that he admitted himself into protective custody and was housed in the Special Housing Unit ("SHU") because he states he was threatened by Mexican Gang Members. *Id.* at 5. Plaintiff alleges that on September 16, 2009, Officer T. Smith informed him that he was getting a new cellmate per orders by Lt. Sneed. *Id.* at 4-5. Plaintiff further alleges that Lt. Sneed was aware that Plaintiff had been threatened and Plaintiff told the officers that he could not be placed in a cell with any Mexican inmates because he feared for his safety. *Id.* at 5. Plaintiff states that he refused to "cuff up" and then Officer Yates sprayed him twice with pepper spray in an "unnecessary over the allowed amount," leaving his face and body "soak[ed] in pepper

---

[2] This matter was referred to Magistrate Judge Hendricks pursuant to 28 U.S.C. § 636 and Local Rule 73.02, D.S.C.

[3] Filing date under *Houston v. Lack*, 487 U.S. 266 (1988) (stating that a prisoner's pleading is deemed filed at the moment of delivery to prison authorities for forwarding to district court).

2

spray." *Id.* at 5-6. Plaintiff alleges that he was not thereafter allowed to flush his body with water "to ease the burning and pain from the pepper spray." *Id.* at 6. Plaintiff states that he has since suffered from "skin problems on [his] face and body," and ear infections. *Id.*

Plaintiff also alleges that while Officer Yates was spraying him with pepper spray, Lt. Pelt shot Plaintiff three times with a "pellet gun" while Plaintiff was in his cell. *Id.* at 6-7. Plaintiff contends that one of pellets hit him in the spine, re-aggravating an injury suffered in a car accident in 2005. *Id.* at 7. Plaintiff acknowledges that he was eventually seen by medical staff, but he alleges that "Medical Staffs Eneje, V. MLP; Middleton, Tamala ARNP; and Nurse Green" failed to "acknowledge and document" the seriousness of his injuries. *Id.* at 7-8. Plaintiff further contends that he requested to see a doctor about his injuries, but he has not been allowed to see one. *Id.* at 8.

Further, Plaintiff alleges that he spoke with Warden Rivera, "explaining to her [his] reasons of being in the (SHU), why [he] refused to cuff up and take a cell[mate], and the cruel and unusual punishment by Lt. Yates and Lt. Pelt," but that she responded that Plaintiff could not pick his cellmates and that she was the one that ordered "the chemical agent on [Plaintiff]." *Id.* Plaintiff contends that other inmates who have refused to "cuff up" when not wanting to take a cellmate have not been sprayed. *Id.*

For relief, Plaintiff seeks an award of both actual and punitive damages, costs and expenses, and any other relief that the court deems just and proper. *Id.* at 10. In addition, Plaintiff asks that all defendants be sanctioned. *Id.*

II.     Defendants' Statement of the Facts

Defendants state that on April 7, 2009, Plaintiff was placed in the SHU as a result of disciplinary charges. Motion for Summ. J. at 10 (citing Discipline Hearing Officer Report [Docket

3

Entry 34-8]). Defendants state that on April 28, 2009, Plaintiff informed the SHU Lt. that he had been approached by a group of Hispanic inmates on the recreation yard and they told him in an aggressive manner to watch his back. *Id.* (citing Memo. of SHU Lt. [Docket Entry 34-9]). An investigation thereafter commenced regarding Plaintiff's safety. *Id.* (citing Decl. of Bondurant [Docket Entry 34-10]). The investigation revealed no evidence to substantiate a threat to Plaintiff's safety, and Plaintiff's request for protective custody was denied. *Id.* at 11.

According to Officer Yates's [Docket Entry 34-25] Declaration, on September 16, 2009, at approximately 10:30 a.m., Yates went to the SHU to speak with Plaintiff after being informed that Plaintiff had "refused to submit to hand restraints because he did not want a cellmate" and that Plaintiff had "covered his cell window and barricaded his door" with his mattress. *Id.* at 2. Yates then ordered Plaintiff to remove the mattress and window covering, and Plaintiff complied. *Id.* When Yates asked Plaintiff why he was refusing to submit to hand restraints, Plaintiff responded that he did not want a cellmate. *Id.* Yates states that Plaintiff then placed his mattress against the cell door again. *Id.* Yates notified his captain of the situation, and the officers unsuccessfully attempted to informally resolve the situation. *Id.* at 2-3. Yates further states that because Plaintiff had his cell window and door covered, the officers were unable to see what Plaintiff was doing in his cell and the "Acting Warden ordered a Use of Force Team . . . be assembled and chemical munitions brought to SHU." *Id.* at 3. Yates states that he gave Plaintiff one last order to submit to the hand restraints and, when Plaintiff refused, Yates ordered a staff member to administer munitions through the cell's food slot and a three second chemical spray was sprayed on Plaintiff. *Id.* Yates thereafter again ordered Plaintiff to submit to hand restraints, but he again refused. *Id.* Yates then ordered a second three second chemical spray, which was done. *Id.* Afterwards, Plaintiff again refused to submit to

4

the hand restraints. *Id.* Yates states that he then "ordered Lt. Pelt to administer rounds from the Pepper Ball Launcher." *Id.* After six rounds were dispensed from the Pepper Ball Launcher, Yates again ordered Plaintiff to submit to the hand restraints and Plaintiff again refused. *Id.* Yates states that he ordered six more rounds from the Pepper Ball Launcher and then ordered the team to enter Plaintiff's cell. *Id.* at 4. The team entered the cell and applied both hand and leg restraints to Plaintiff, and then removed him from his cell. *Id.* Yates states that Plaintiff was taken to another cell where he was given a shower to decontaminate himself and he then was placed in ambulatory restraints and given clean underwear. *Id.* Plaintiff was examined by a physician's assistant and no injuries were found. *Id.* The medical staff did note that Plaintiff had a runny nose and complained of stinging in his groin area, and they advised Plaintiff to take a full shower. Medical Records [Docket Entry 34-19] at 13-14.

On September 16, 2009, an incident report was written charging Plaintiff with "[r]efusing an order from . . . staff" for refusing to submit to the hand restraints. Incident Report [Docket Entry 34-22]. On October 6, 2009, a hearing on this incident report was conducted by the Discipline Hearing Officer ("DHO"). [Docket Entry 34-23]. The DHO found Plaintiff guilty as charged and sanctioned him with the loss of 14 days of good time credit and 6 months of commissary privileges, and the impoundment of his personal property for 30 days. *Id.* at 2.

On November 12, 2009, Plaintiff made his first complaint to medical staff. Medical Records at 15-17. Plaintiff was seen for sick call complaining of swelling in his face. *Id.* Medical staff assessed Plaintiff with an abscess to the right jaw line. *Id.* Plaintiff was given antibiotics and pain medications. *Id.* On November 28, 2009, Plaintiff was again seen by medical staff, but he did not voice any complaints regarding this previous infection. *Id.* at 21-22.

On January 26, 2010, two months later, Plaintiff complained that his skin had been breaking out for six weeks. *Id.* at 23-24. Plaintiff was assessed with acne and Rosacea, given medication to treat his rash, and instructed to return as needed. *Id.* Plaintiff was seen again, five weeks later, when he signed up for sick call complaining of a rash over his entire body. *Id.* at 26-27. Medical staff gave Plaintiff more antibiotic medication to treat the rash and instructed him to return as needed. *Id.* Plaintiff did not sign up for sick call again at FCI-Estill. *Id.*

After arriving at FCI-Otisville, Plaintiff signed up for sick call and was seen on June 18, 2010. *Id.* at 30-31. Plaintiff claimed that he had been experiencing chronic back pain for about ten months caused by being shot by the pellet gun at FCI-Estill. *Id.* Plaintiff was given pain medication and instructed to follow-up as needed. *Id.* Plaintiff again complained of lower back pain on July 2, 2010, so the medical staff ordered a L-spine film, which is still pending. *Id.* at 32; *see also* Obj. at 2 (noting that L-Spine X-Ray "is still pending"). The docket now reflects that Plaintiff is currently incarcerated at Federal Correctional Complex II in Adelanot, California.

## **Standard of Review**

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo*

review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## Discussion[4]

I.   FTCA Claim

Plaintiff brought a cause of action for negligence pursuant to the FTCA. In the R & R, the Magistrate Judge recommended dismissing the FTCA cause of action for lack of a proper defendant, and Plaintiff did not object to this recommendation. As the Magistrate Judge found, in FTCA actions, the only proper defendant is the United States. *See* 28 U.S.C. § 1346(b)(1); *see also Lopez v. U.S. Gov't*, 68 F. Supp. 2d 688, 690-91 (M.D.N.C. 1999). Because the United States is not a defendant in this action, the FTCA claim should be dismissed without prejudice. Thus, having found no clear error on the face the record, the court adopts the Magistrate Judge's recommendation.

II.   Excessive Force

Plaintiff alleges that Defendants used excessive force against him when they sprayed him with pepper spray and when they shot him with the Pepper Ball Launcher. In the R & R, the Magistrate Judge concluded that this claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See*

---

[4] As an initial matter, the Magistrate Judge noted in her R & R that "Defendant Sneed ha[d] not been served and it appear[ed] he [was] no longer working at Estill." R & R at 7 n.5. Therefore, the Magistrate Judge, in light of the fact she was recommending that Plaintiff's entire case be dismissed, "recommended that [Defendant Sneed] be dismissed from the case without service of process or response." *Id.* (citing *Ali v. Corr. Med. Servs., Inc.*, C.A. No. DKC-09-0466, 2009 WL 2713948, at *1 n.1 (D. Md. Aug. 25, 2009)). Plaintiff did not specifically object to this recommendation. Accordingly, because this Order adopts the R & R and ultimately grants summary judgment in favor of Defendants, the court dismisses Defendant Sneed after finding no clear error as to this recommendation.

R & R at 7-8. Moreover, in the alternative, the Magistrate Judge concluded that "Plaintiff's excessive force claims be dismissed on the merits." *Id.* at 8.

Plaintiff appears to object to the dismissal of his excessive force claims. However, upon review, Plaintiff did not object to the Magistrate Judge's finding that his excessive force claims were barred by *Heck*. Under *Heck*, "when a . . . prisoner seeks damages in a [*Bivens*] suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. The Supreme Court, in *Edwards v. Balisok*, 520 U.S. 641 (1997), applied the holding from *Heck* to prison disciplinary proceedings that resulted in the loss of good time credits. *Id.* at 645-48. In our case, after Plaintiff refused to submit to hand restraints and the alleged excessive force was then applied, Plaintiff was found guilty in a disciplinary hearing of refusing an order of staff, resulting in the loss of good time credits and commissary.[5] The Magistrate Judge concluded in the R & R that "the awarding of damages [in this action] to the Plaintiff would necessarily imply the invalidity of the outcome of his disciplinary hearing and thus his excessive force claim is barred under *Heck* and *Balisok*." R & R at 8. Plaintiff did not specifically object to this finding. Thus, after reviewing the face of the record for clear error and finding none, the court adopts this recommendation of the Magistrate Judge. *See Diamond*, 416 F.3d at 315.

Alternatively, even if Plaintiff's excessive force claims were not barred by *Heck*, the court overrules Plaintiff's objections and concludes, as did the Magistrate Judge, that Plaintiff's claims

---

[5] The court notes that Plaintiff has not alleged or shown that he has successfully attacked his disciplinary hearing conviction.

8

fail on the merits. To establish a claim of excessive force, a plaintiff must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal citations and quotations omitted); *see also Hudson v McMillan*, 503 U.S. 1, 6-7 (1992). Courts must look at several factors when determining whether prison officials acted maliciously and sadistically: (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force applied; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of facts known to them at the time; and (5) the efforts taken by those officials, if any, to temper the severity of the response. *Whitley*, 475 U.S. at 321. Furthermore, the absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010). Rather, the extent of the injury incurred is one of several factors to be considered, but ultimately it is "the nature of the force [as opposed to] the extent of the injury" that determine excessive force claims. *Id.* at 1176.

Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of prison officials are necessary to "preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321-22 (internal quotations and citations omitted). Moreover, the Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not "substitute their judgment for that of [prison] officials who have made a considered choice." *Id.*

In *Bailey v. Turner*, 736 F.2d 963 (4th Cir. 1984), the Fourth Circuit specifically addressed the use of chemical spray in a prison setting. The Fourth Circuit recognized that as long as the

9

quantity of chemical spray used is commensurate with the gravity of the occasion, the Constitution is not violated. *Id.* at 969. The court is to look at "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used, in determining the validity of the use of tear gas in the prison environment." *Id.* The Fourth Circuit more recently has specifically held that chemical spray "can be constitutionally used in small quantities to prevent riots and escapes or to control a recalcitrant inmate." *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (internal quotations omitted).

In our case, the court notes that it is undisputed that Plaintiff refused to submit to restraints, or "cuff up," when repeatedly requested to do so by prison officials. In addition, Plaintiff does not dispute the contention that he persisted in his disobedience even after he was sprayed with the chemical spray and again ordered to submit to the restraints. Furthermore, the Bureau of Prisons ("BOP") policy allows the use of pepper ball launchers that shoot plastic spheres that are filled with powder OC that bursts upon impact. *See* Declaration of BonDurant [Docket Entry 34-10] at 5. BOP policy allows five to eight rounds to be used and for the operator to aim for the center mass area of the inmate. *Id.*

Upon review, the undersigned agrees with the Magistrate Judge that "[i]t appears that the need for force and the amount of force used was not unreasonable." R & R at 10. Defendants' use of force was necessary as Plaintiff failed to follow repeated, direct orders and admits that he refused to "cuff up." Defendants also reasonably perceived a possible threat of violence or prison disturbance by Plaintiff, as Defendants indicate that Plaintiff had barricaded himself into his cell and they could not see what he was doing, and Plaintiff admits that he refused their orders to "cuff up." Moreover, Defendants indicate that they attempted to "informally resolve" the situation prior to

administering the chemical spray, and that they then administered the chemical spray and Pepper Ball Launcher in short bursts or limited rounds, respectively. Courts have held that a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding that prison officials did not violate inmate's Eighth Amendment rights when they pepper sprayed him after he "disobeyed repeated direct orders" and "the force used was applied in a good-faith effort to maintain or restore discipline"); *see also Williams*, 77 F.3d at 763 (stating that the "initial application of mace did not constitute cruel and unusual punishment"); *Grayson v. Peed*, 195 F.3d 692, 696-97 (4th Cir. 1999) (holding that prison official's force, including use of pepper spray, was not excessive when inmate attempted to "force his way out of the cell" and refused to remove his arm from food slot in his cell door "afer repeated entreaties"; officials "felt the need to subdue [inmate], either to calm the general environment or to prevent [inmate] from hurting himself"). In addition, while Plaintiff alleges that he suffered a back injury, skin problems, and an ear infection as a result of the force used by Defendants, beyond his own allegations, Plaintiff has failed to provide any evidence, such as medical records, that these injuries were *caused by* the use of the chemical spray or Pepper Ball Launcher. Finally, Plaintiff appears to argue that the prison officials should not have used the chemical spray or Pepper Ball Launcher because he was confined in his own cell during the incident. This objection is overruled. The fact remains, Plaintiff failed to follow direct orders to submit to restraints or "cuff up," and the Fourth Circuit has specifically held that "mace can be constitutionally used in small quantities to . . . control a recalcitrant inmate." *Williams*, 77 F.3d at 763 (internal quotations omitted). Accordingly, after balancing the *Whitley* factors, the court agrees with the Magistrate Judge that, based on the record, "no reasonable jury could find that the Defendants' use of mace was

not a good faith effort to restore and maintain prison discipline but rather was used maliciously and sadistically to cause physical harm." R & R at 11.

Thus, in sum, Plaintiff's claims of excessive force are barred by *Heck* and, in the alternative, fail on the merits. Therefore, summary judgment should be granted in Defendants' favor as to these claims.

III.   Medical Indifference

Plaintiff also alleged in his Complaint that he was denied medical treatment after the chemical spray and Pepper Ball Launcher were administered, more specifically, when "Medical Staffs Eneje, V. MLP; Middleton, Tamala ARNP; and Nurse Green, refuse[d] to acknowledge and document, the seriousness of [Plaintiff's] pain and suffering" from his back injury. Compl. at 7.

The Government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). This obligation arises from the inmate's complete dependence upon prison medical staff to treat his medical needs. *Id.* The Supreme Court has "therefore conclude[d] that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id.* at 104 (internal citations omitted). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. For example, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment," nor does "[m]edical malpractice . . . become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. Instead, it is only when prison officials have exhibited "deliberate indifference" to an inmate's "serious medical needs" that the Eighth Amendment is violated. *Id.*

To establish that a health care provider acted with deliberate indifference, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness[;] . . . mere negligence or malpractice does not violate the eighth amendment." *Miltier v. Brown*, 896 F.2d 848, 851-52 (4th Cir. 1990). "Likewise, non-medical prison employees can be found to have acted with deliberate indifference if they intentionally delay or deny an inmate's access to medical care or intentionally interfere with prescribed treatment." *Wynn v. Mundo*, 367 F. Supp. 2d 832, 837 (M.D.N.C. 2005) (citing *Estelle*, 429 U.S. at 104-05). However, "[a] medical treatment claim cannot be brought against non-medical personnel . . . unless they were personally involved with a denial of treatment or deliberately interfered with prison doctors' treatment." *Id.* (citing *Miltier*, 896 F.2d at 850).

Here, in the R & R, the Magistrate Judge concluded that "Plaintiff's medical indifference claims against the Defendants should be dismissed." R & R at 16. Upon review, the undersigned agrees. First, there are no factual allegations of medical indifference alleged against any of the named defendants in this action.[6] Second, the defendants actually named in the Complaint are all non-medical prison personnel,[7] and therefore, in order to establish his claim of deliberate indifference, Plaintiff must show "they were personally involved with a denial of treatment or

---

[6] In his Complaint, Plaintiff alleged that "Medical Staffs Eneje, V. MLP; Middleton, Tamala ARNP; and Nurse Green" failed to "acknowledge and document" the seriousness of his injuries. However, none of these three persons were named as defendants in this action. Similarly, in his Objections, Plaintiff asserts that Dr. Wigfall and Dr. Fulmer acted with deliberate indifference to his medical needs. *See* Obj. at 3. However, while these two individuals were, in fact, included in the caption to the Magistrate Judge's R & R, that inclusion appears to have been a scrivener's error. Upon review of the entire record, these two individuals–Wigfall and Fulmer–were not named as defendants in Plaintiff's Complaint, nor has Plaintiff ever moved to amend his pleadings to include them as defendants. Thus, as stated above, Plaintiff has failed to assert any factual allegations of medical indifference against the named defendants in this action.

[7] The four defendants named in this action include the warden of FCI-Estill, as well as three lieutenants at FCI-Estill.

deliberately interfered with prison doctors' treatment." *Wynn*, 367 F. Supp. 2d at 837 (citing *Miltier*, 896 F.2d at 850). However, Plaintiff has failed to assert any such allegations of personal involvement in this case, nor is there any evidence in the record to support any such allegations.

In his Objections, Plaintiff states he "was unable to be seen for medical to diagnose the illnesses of [his] skin infection from being pepper sprayed by Defendant Lt. A. Pelt," and that "medical staff fail[ed] to order a L-Spine X-ray of [his] back." Obj. at 3. However, the record in this case indicates that Plaintiff was examined by prison medical staff immediately after the pepper spray was administered and he was restrained by prison staff. *See* Medical Records at 13-14. In addition, the record further reveals that Plaintiff was examined by prison medical staff, upon request by Plaintiff, on several later dates. Moreover, the record also contradicts Plaintiff's claim that an X-ray of his back was never ordered. The Medical Records indicate that a L-spine film was ordered on July 2, 2010, and Plaintiff even admits as much in his Objections. *See id.* at 32; *see also* Obj. at 2 ("In this case the Prison doctor thought the Plaintiff problem was serious enough to require treatment a cat-scan X-ray an[d] L-spine X-ray . . . ."). Accordingly, for all the above reasons, the court adopts the Magistrate Judge's recommendation that "Plaintiff's medical indifference claims against the Defendants . . . be dismissed." R & R at 16.

IV.    Failure to Protect and Equal Protection

Plaintiff also asserted claims against Defendants for failure to protect and equal protection. In the R & R, the Magistrate Judge recommended that summary judgment should be granted as to each of these claims. As to failure to protect, the Magistrate Judge found that "Plaintiff ha[d] not shown he was incarcerated under conditions posing substantial risk of serious harm, nor ha[d] he presented any evidence to show that the officers knew of and deliberately disregarded a threat to his

14

safety." R & R at 12.  Moreover, the Magistrate Judge concluded that "Plaintiff ha[d] not alleged an adequate injury to state a claim [for failure to protect]." *Id.* at 13.  As to the equal protection claim, the Magistrate Judge found that "Plaintiff d[id] not assert that his allegedly unequal treatment was the result of intentional discrimination.  Thus, the Plaintiff's conclusory and unsupported statements [were] insufficient to state an equal protection claim . . . ." *Id.* at 13-14.  Plaintiff did not object to these recommendations.  As a matter of fact, Plaintiff failed to address either of these claims–failure to protect and equal protection–anywhere in his Objections.  Accordingly, after reviewing the face of the record for clear error and finding none, the court adopts the recommendation of the Magistrate Judge that summary judgment should be granted as to these two claims. *See Diamond*, 416 F.3d at 315.

V.     State Law Claims

To the extent that Plaintiff is raising any state law claims, the Magistrate Judge recommended in the R & R that the court should "decline to exercise jurisdiction over whatever state law claims the Plaintiff may have against the Defendants."  R & R at 16.  Plaintiff did not object to this recommendation.  "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).  Here, because this Order dismisses all of Plaintiff's federal claims, and in light of the fact that Plaintiff did not object to the Magistrate Judge's recommendation, the court declines to exercise supplemental jurisdiction over any state law claims that Plaintiff may have asserted against Defendants.

VI.     Motion to Appoint Counsel

First and foremost, Plaintiff's Motion to Appoint Counsel should be denied as moot as this Order dismisses all of Plaintiff's claims. Regardless, even if Plaintiff's claims were not being dismissed, denial of the Motion would still be appropriate. There is no right to appointed counsel in Section 1983 or *Bivens* cases. *Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975). The court is granted the power to exercise its discretion to appoint counsel for an indigent in a civil action. *See* 28 U.S.C. § 1915(e)(1); *see also Smith v. Blackledge*, 451 F.2d 1201, 1203 (4th Cir. 1971). However, counsel should be appointed only in "exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (citation omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that § 1915 does not authorize compulsory appointment of counsel). Here, upon review, the court finds that Plaintiff's claims are not complex and through his various filings with the court, Plaintiff has demonstrated his ability to represent himself. The court has reviewed Plaintiff's claims and various filings, and has determined that there are no exceptional circumstances to justify the appointment of counsel, nor will Plaintiff be denied due process if an attorney is not appointed. Therefore, Plaintiff's Motion to Appoint Counsel should be denied.

## Conclusion

The court has thoroughly reviewed the entire record, including the R & R and objections, and applicable law. For the reasons stated above and by the Magistrate Judge, the court hereby overrules all of Plaintiff's objections and adopts and incorporates by reference the R & R of the Magistrate Judge. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's

*Bivens* claims are hereby **DISMISSED** *with prejudice*. The remaining FTCA claim and state law claims are **DISMISSED** *without prejudice*.

  **IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel is **DENIED**.

  **IT IS SO ORDERED.**

             s/R. Bryan Harwell
             R. Bryan Harwell
             United States District Judge

Florence, South Carolina
August 25, 2011